IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cr-30075 |
| | ) | |
| VICENTE SANTANA-CRUZ, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

On July 3, 2012, the Court held a sentencing hearing concerning Defendant Vicente Santana-Cruz (Santana). Santana lodged six objections to the Presentence Investigation Report (PSR). This Opinion explains the Court's rationale in denying the objections and adopting the calculations of the probation officer.

I.

Santana first entered the United States in February 1985. He was arrested by immigration officers in Dallas, Texas, on May 22, 1998, and November 16, 1998, and was removed to Mexico on both occasions.

1

Santana was arrested by Border Patrol agents on April 14, 2006, near Laredo, Texas, and removed to Mexico on April 16, 2006.

Since the 1980s, Santana has resided in the Dallas-Fort Worth metropolitan area with his wife and children, who are all apparently citizens of the United States.

On October 25, 2011, Santana's vehicle became disabled near a Super 8 Motel in Springfield, Illinois. An officer of the Illinois Secretary of State Police stopped to assist him. The officer requested the assistance of Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security. ICE agents arrived on scene and made contact with Santana, who admitted to agents that he was not lawfully present in the United States.

At the ICE office, agents advised Santana of his consular notification rights, and his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Santana said that he understood these rights, agreed to answer questions, and executed written waivers of his consular and *Miranda* rights. During an interview with an agent, he admitted that he was removed in April of 2006, and stated that following his removal he

2

visited his family in Guerrero, Mexico, for about a month before returning to the United States. He stated that he paid an individual $1,500 in Nuevo Laredo, Mexico, to assist him in crossing the Rio Grande into Laredo, Texas.

On November 9, 2011, Santana was charged with being present in the United States without permission following deportation, in violation of 8 U.S.C. § 1326. He pled guilty pursuant to a plea agreement, and the Court accepted his plea of guilty.

## II.

### A.

The PSR revealed important information regarding Santana's background, including his criminal history.

In the late 1990s, Santana engaged in a beer theft scheme. He would enter a grocery store and purchase ten cases of Coors Light beer. He would take the beer to his vehicle and return to the store with his receipt. He would then load another ten cases of Coors Light into a shopping cart and attempt to exit the store with the beer. If challenged

by store employees, he would present the receipt from the previous ten cases of beer.

Santana committed this offense on June 30, 1996, and pled guilty to theft of property between $50 and $500 in Collin County, Texas, on May 26, 1998. On the same date, he received a sentence of 50 days in jail, a $500 fine, and $232 in court costs.

He committed the same offense again in Collin County on October 11, 1998. Santana pled guilty to the same charge on November 13, 1998. He was sentenced on the same date to 30 days of incarceration and he was directed to pay $259 in court costs.

The probation officer assessed one criminal history point for each of these convictions.

On December 31, 2005, Santana was caught driving while intoxicated in Ellis County, Texas. On July 18, 2006, he pled no contest, received a suspended sentence of 120 days incarceration, was sentenced to two years of probation, was assessed a $500 fine, and was ordered to pay $251 in court costs.

On July 16, 2008, the court in Ellis County issued a probation violation warrant. (It appears that Santana neglected to pay the fine and court costs.)

On July 8, 2009, Santana was sentenced in Ellis County to 16 days of incarceration for the violating the terms of probation. The probation officer assessed two criminal history points for this offense.

The probation officer also assessed two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d), because Santana was on probation for the Ellis County case when he committed the instant offense.

Other convictions were detailed in the PSR, but they do not have any bearing on the issues discussed in this Opinion.

## B.

Santana, through counsel, lodged six objections to the PSR. His first two objections related to the assessment of one criminal history point for each of the Collin County convictions. He contended that no criminal history points should be assessed because these convictions were over ten years old.

5

Santana objected to the two-point increase based upon the conclusion that he committed the instant offense while under court supervision in the Ellis County case. He stated that the term of supervision expired in July 2009, and that the PSR had not specifically identified when the Defendant had reentered the United States. He argued that there are no facts which demonstrate that he was under court supervision when the instant offense occurred.

Santana's remaining objections were "tallying objections" relating to how the total criminal history point calculation, the criminal history category, and the guideline range would be impacted if he prevailed on the three substantive objections.

## C.

The day before the sentencing hearing, the Court requested that the probation officer provide the Court copies of the documents received from Ellis County, Texas. The Court reviewed these documents and had them docketed under seal, with copies to counsel.

The Ellis County docket sheet reflected that on May 11, 2006, Santana appeared in court. On June 12, 2006, he was present and signed

the docket sheet, but the case was continued. Finally, the docket sheet reflects that he pled no contest on July 18, 2006. Another document dated July 18, 2006, contains Santana's signature and a fingerprint, and reflects that Santana received a copy of the sentencing order.

### III.

At the sentencing hearing, Santana stated that the controlling Seventh Circuit authority is *United States v. Lobano-Rios*, 97 Fed. App'x 657 (7th Cir. 2004). He stated that the Court of Appeals held in *Lobano-Rios* that the appropriate date for determining criminal history is the date of illegal reentry into the United States. Santana noted that in *Lobano-Rios* the Court of Appeals cited *United States v. Lopez-Flores*, 275 F.3d 661 (7th Cir. 2001) (Posner, J.).

Santana stated that in *United States v. Hernandez-Guerrero*, 633 F.3d 933 (9th Cir. 2011), the individual was assessed criminal history enhancements because there was a verifiable date of illegal reentry.

Santana admitted that it is appropriate to receive two additional criminal history points under U.S.S.G. § 4A1.1(d) when there are facts that demonstrate that the individual has committed the new offense—*i.e.*

7

a violation of 8 U.S.C. § 1326—while under a court's supervision. Santana argued that the two-point enhancement under U.S.S.G. § 4A1.1(d) could only be levied if it could be demonstrated that the Defendant illegally reentered the country during the Ellis County term of probation.

He asserted that the only known date is the day he was found in the United States—October 25, 2011.

As a result, Santana claims that there is no way to know whether the instant offense was committed either (1) within ten years of his Collin County sentencing hearings, or (2) while on court supervision. He argued that the inability to determine a precise reentry date should preclude the assessment of the criminal history enhancements.

Santana stated that it would be inappropriate for the Court to "surmise" that the Defendant had remained illegally in the country based upon logical inferences from the PSR.

## IV.

### A.

An indictment or information charging a defendant with violating 8 U.S.C. § 1326 will usually contain the date that the defendant is found in the United States by immigration authorities. However, the offense of illegally reentering the United States begins at reentry and continues until the person is discovered by immigration authorities. The Court of Appeals explained the following in *Lopez-Flores*.

> All the courts to address the question have held that at least in the case of surreptitious reentry, as in this case, the "found in" offense is first committed at the time of the reentry and continues to the time when the defendant is arrested for the offense. This is clearly correct. Section 1326(a) punishes entering, attempting to enter, and being found in the United States after being deported. We think "found in" must have the force of "present in" rather than "discovered by the INS to be in." The date of discovery has no significance so far as culpability is concerned, though it may bear on the running of the statute of limitations. It would be passing odd to say that Lopez had violated the statute when he entered but then was free of further criminal culpability until he was discovered by the INS.

*Lopez-Flores*, 275 F.3d at 663 (citations omitted).

B.

The Court will first address the two one-point enhancements assessed for each of the Collin County convictions. Under U.S.S.G. § 4A1.2(e)(2), "[a]ny other prior sentence that was imposed within ten

years of the defendant's commencement of the instant offense is counted."

The ten years begins at imposition of the previous sentence, not the commission of the previous offense. So, the operative dates are May 26, 1998, and November 13, 1998—the dates the sentences were imposed in Collin County, Texas.

Next, we look to the other limit: "the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(2). In *Hernandez-Guerrero*, the Ninth Circuit focused on the word "commencement" in U.S.S.G. § 4A1.2(e)(1) in holding that the appropriate point is the date of reentry. 633 F.3d at 937.

It appears that Santana is correct that the appropriate date for enhancements under this subsection would probably be the last reentry date, because the text of the Guidelines Manual refers to the "commencement" of the offense.

So, the task before the Court is to determine whether Santana reentered the United States within ten years of May 26, 1998, and November 13, 1998.

Santana was removed on April 16, 2006, and stated that he reentered the United States approximately one month later. On May 11, 2006, he was at the Ellis County Courthouse in Waxahachie, Texas, according to a certified copy of the docket sheet in that case. Therefore, the Court concludes that Santana reentered the United States in either late April or early May 2006, which is within ten years of both Collin County sentencing dates.

Contrary to Santana's arguments, it is unnecessary to determine the exact reentry date. The Court notes that in *Lopez-Flores*, the Seventh Circuit upheld enhancements based upon the district court's conclusion that the defendant reentered the United States illegally "sometime before April 1999." 275 F.3d at 663.

## C.

The Court turns to the two-point enhancement for committing the instant offense while under court supervision.

The text of the Guidelines Manual subsection states the following:

> Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1(d).

This subsection is different from U.S.S.G. § 4A1.2(e)(2), in that <u>it makes no reference to the commencement of an offense</u>. As a result, *Hernandez-Guerrero* would be inapplicable.

Therefore, if any portion of the offense was committed while under court supervision, the two-point enhancement would be triggered. *See* U.S.S.G. § 4A1.1 cmt. n.4. This would include either reentry or remaining unlawfully in the United States. *See Lopez-Flores*, 275 at 663 ("the . . . offense is first committed at the time of reentry and continues to the time when the defendant is arrested for the offense"). As long as it can be demonstrated that Santana continued to be unlawfully in the country during the period of supervision, the two-point enhancement will apply.

Santana is incorrect when he argues that it must be proven that the reentry occurred during the period of court supervision.

Santana's reliance on *Lobano-Rios* is misplaced. The Court notes that *Lobano-Rios* is a per curiam, non-precedential dispositive order, not

a published opinion.[1]  While the Court notes that these kinds of dispositions are of great utility to both this Court and practitioners, they have limitations.  Unpublished appellate dispositions are written to dispose of the case at hand, and not to create broad rules.  They typically involve applying well-settled law to new facts.

Santana has relied upon *Lobano-Rios* for the proposition that, in the U.S.S.G. § 4A1.1(d) context, the Court must look to the date of reentry in determining whether the offense took place during a period of court supervision.  *Lobano-Rios* contains the following passage: "the appropriate date is not when Lobano was *found* in the United States but when he *entered* the United States." *Id.* at 659.  The Court understands how this passage could lead to such an interpretation.  However, on closer examination, it appears that Santana has overstated the significance of the case.

In *Lobano-Rios*, the defendant was convicted of attempted murder and voluntary manslaughter in 1980 and was deported in October 1995,

---

[1]  Inclusion in the Federal Appendix does not mean that a disposition was published. *See Black's Law Dictionary*, 685 (9th ed. 2009) ("*Federal Appendix.*  A set of reports containing all the full-text "unpublished" opinions that West receives from the federal circuit courts of appeals.  These are the opinions not designated for publication in the *Federal Reporter.*").

following service of his sentence. *Id.* at 658. The defendant told the probation officer that he reentered the United States on the same date he was deported in October 1995. *Id.* at 659. The Court of Appeals surmised that he reentered the United States within a year of his deportation, because he obtained an Illinois driver's license in July 1996. *Id.* at 658, 659. His probation ended in August 1997 and he was detained by immigration authorities in December 2002. *Id.* at 659.

When the full context of the relevant passage is examined, the limited nature of the holding becomes apparent:

> At sentencing Lobano's trial counsel disputed the district court's imposition of a two-point increase in Lobano's criminal history category for committing the current offense while on probation from a previous offense. U.S.S.G. § 4A1.1(d). Lobano argued that he was not arrested for illegal reentry until December 23, 2002, whereas his probation had ended in August 1997. But because § 1326(a) "punishes entering, attempting to enter, and being found in the United States after being deported," the appropriate date is not when Lobano was *found* in the United States but when he *entered* the United States. *United States v. Lopez-Flores*, 275 F.3d 661, 663 (7th Cir.2001).

*Lobano-Rios*, 97 Fed. App'x at 659.

In *Lobano-Rios*, the Court of Appeals was neither clarifying the rule from *Lopez-Flores*, nor breaking new ground in this arena. Rather the

14

Court of Appeals referred to that portion of the rule in *Lopez-Flores* that applied in the case at hand, and applied that portion of the rule to the facts of the case.

Essentially, the Court of Appeals used one of the two prongs of the holding in *Lopez-Flores*. The use of one prong in an unpublished per curiam disposition (offense begins at reentry) does not eradicate the other prong of the holding (offense continues as a defendant remains unlawfully).

In *Lobano-Rios*, the issue was whether to use the date he was apprehended by immigration authorities (over five years after his probation had concluded) or the date of reentry (which occurred during the term of probation). The use of the date of reentry was authorized by *Lopez-Flores*, and the record clearly showed that the defendant illegally reentered during the term of probation.[2] Therefore, that was an appropriate date to use for the purposes of U.S.S.G. § 4A1.1(d), and,

---

[2] The Court notes that in making its determinations in *Lobano-Rios*, the Court of Appeals was not especially concerned with the exact date that the defendant reentered the United States. 657 Fed. App'x at 658, 659 ("Lobano reentered the United States very shortly thereafter-perhaps immediately, but certainly within a year from his deportation date . . . Lobano certainly reentered the United States as early as July 1996").

arguably, that was the end of the inquiry. It would have been redundant for the Court of Appeals to address the equally valid argument that U.S.S.G. § 4A1.1(d) also applied because the defendant unlawfully remained in the country from the second half of 1996 to the end of his term of probation.

The argument that *Lobano-Rios* altered or narrowed *Lopez-Flores* is unpersuasive. *See Banker's Trust Co. v. Old Republic Ins. Co.*, 7 F.3d 93, 94-95 (7th Cir. 1993) ("Lack of publication usually reflects the court's belief that the dispute is one-sided, sapping the disposition of precedential value.") (Easterbrook, J.).

Therefore, applying *Lopez-Flores*, the Court has determined that Santana committed the instant offense while under the Ellis County term of probation. U.S.S.G. § 4A1.1(d) applied when he walked out of the Ellis County Courthouse on July 18, 2006. He presumably remained in the United States unlawfully until he was detained in October 2011, as corroborated by arrest and employment information contained in the PSR.

## D.

To summarize, U.S.S.G. §§ 4A1.2(e)(2) and 4A1.1(d) are dissimilar. Under § 4A1.2(e)(2), the Court must determine whether the federal offense <u>commenced</u> within ten years of the imposition of sentence in the previous case. Under § 4A1.1(d), the Court must determine whether the defendant was under a criminal justice sentence during the commission of <u>any portion of the federal offense</u>.

In general, it is unnecessary for the Court to make a specific finding regarding the exact date a defendant illegally reentered the United States.

V.

*Ergo*, the Defendant's objections to the Presentence Investigation Report are OVERRULED, and the Court ADOPTS the position of the probation officer and the Government.

IT IS SO ORDERED.

ENTER: July 13, 2012

FOR THE COURT:                    */s/ Richard Mills*
                                   _____
                                        Richard Mills
                                   United States District Judge

17